STATE OF IOWA v. LEONARD W. HEALY, Appellant.

**Murder:** SUFFIENCY OF EVIDENCE.   Two policemen were shot in certain railroad yards.   One was killed outright, but before the other expired he indicated by signs that they had been shot within a passenger coach, by two men who had escaped   A witness saw two men run away immediately after the shooting, and their tracks were found.   He was eight and one-half feet from the men, and identified one as R., and described the other as of size and dress similar to defendant.   A window in the coach was broken out, which a witness heard done immediately after the shooting, and there were blood stains on the coach   The bullets shot were thirty-eight caliber, and a thirty-eight caliber revolver was found next day not far from the coach.   It was of blue steel, and bloody, and

bullets therein were battered at the ends. .Two nights before the killing defendant was at an hotel, where the clerk took from him a blue steel revolver and in removing the bullets therefrom he battered the ends   The clerk returned the revolver the next morning with the bullets replaced, defendant claiming it as his property. The clerk identified the revolver found as that of defendant. Defendant and R. robbed several people on the night ] re /ious to the shooting, and the policemen killed were notified of this fact. Defendant and R. were seen together after the shooting at different times and places until arrested. When arrested, they were told that they answered the description of the persons who killed the policemen, and were arrested for that reason. Defendant instantly inquired with anxiety whether both were dead   He also admitted being at said hotel on the night mentioned, and that his revolver was taken from him.   *Held*, that the evidence supported a conviction for murder.

EVIDENCE.   Evidence that defendant, charged with murder of special policeman and two other persons had held up different persons shortly before the crime was committed, is admissible to show that such policemen had the right to arrest them, and that defendant had a motive to resist.

*Same.*   Evidence that a special policeman for whose murder defendant is on trial, said a short time before the crime was committed that he was looking for some persons who were "holding up" people in the neighborhood, and that they could not be far away, is admissible to show what such policeman was doing at the time of the murder.

*Appeal from Dubuque District Court.*—HON. JOHN J· NEY, Judge.

FRIDAY, APRIL 8, 1898.

LEONARD W. Healey, Hugh Robbard, and James Kent are accused in the indictment of having murdered Theodore Frith, April 14, 1893. The defendant Healey had a separate trial, and, upon conviction, was sentenced to imprisonment in the penitentiary for life. He appeals.— *Affirmed.*

No argument for the state or the defendant.

Ladd, J.—On Friday morning, April 14, 1893, at about 2 o'clock a. m. Theodore Frith and Henry Talcott, special policemen of the Chicago, Milwaukee & St. Paul Railroad Company, were shot and killed in its yards at Dubuque. When found, Talcott was lying dead on the platform at the north end of the passenger coach No. 117, and the . bullet, which had passed into his eye and through the brain, was found in the car. Frith was shot in the mouth, and was about two hundred feet from this coach. He was unable to talk, and made himself understood by signs only. He motioned to the passenger coach, pointed to the body of Talcott, and indicated by signs that both had been shot by two men within, and that these men had gone out of the south end towards the street. Immediately after doing this he expired. The bullet entering him was broken in two pieces, and undoubtedly caused his death. A ball also passed along his back without serious injury. Three shots were heard. William Luther saw two men, immediately after the shooting, run around the corner of a stock car near by and over a cinder dump. The headlights of two engines, about three hundred feet away, were turned somewhat in that direction. He was eight and one-half feet from the men when passing, but able to identify Robbard, who stopped and looked at him, as one of them, and describes the other as of size and dress similar to that of Healey. The window in the south end of the car was broken out, and this was heard done by one of the witnesses immediately after the shooting, and there were blood stains on the door post, and also on the steps of the platform. The door was fastened and cushions piled against it as though made for a bed. Near the other end of the car the seats had been turned and the cushions laid lengthwise. These cushions were bloody, and the bull's eye of

a lantern and a chisel were lying near by. The half of a cigar was also found. A fire had been built in the stove, and the kindlings were not all consumed. The tracks of two men were traced from the south end of the passenger coach around the corner of the stock car, where seen by Luther, and over the cinder dump. The bullets were 38 caliber, and a 38-caliber revolver was found the next day in a pile of flues near the boiler house, not far from the coach referred to. This revolver was of blue steel and bloody. The bullets therein were battered at the ends. The accused were at Shea's Hotel Wednesday night, and Humble, the clerk, took from Robbard three revolvers. One of these was of blue steel and in removing the bullets therefrom Humble battered the ends. When he returned them, with the bullets replaced, on the following morning, Robbard kept a 38-calibre, and turned this one over to Healey, who had already claimed it as his own property. In that found the bullets were also battered, and Humble identifies it as that of Healey as positively as such articles may be. Between ten and eleven o'clock Thursday night these three men are proven to have held up Jones, a call boy in the employ of the Illinois Central Railroad Company, David McDonald, and Henry Geiger, and of attempting to hold up M. S. Hardie. In these transactions Healey drew his revolver and compelled his victims to hold up their hands, while the others went through their pockets. The occurrences were promptly reported to the police and search immediately begun. Frith and Talcott were notified of the facts, given a description of the men and asked to keep watch for them, by the marshal. They immediately began searching the yards of the Chicago, Milwaukee & St. Paul Railroad Company. Two strangers were seen going towards coach No. 117 about five minutes before Frith and Talcott went in that direction and only a few minutes before the

shooting. Three were seen in that vicinity, the one separated from the others. Robbard and Healey were seen together at Peosta, about eight miles from Dubuque, early on the morning, and at Epworth about noon, of the day after the shooting. The marshal at Epworth pursued them, and they refused to obey his orders to surrender, although fired upon. They are shown to have been together at different times and places until finally arrested, on Sunday, near Greeley, by the city marshal of that place. The defendant Healey was told by Baxter, a detective, for the first time on Monday, that the two answered the descriptions of the persons who had killed the policemen at Dubuque, and for this reason they were arrested. Healy instantly inquired with anxiety whether both were dead, wanted the description, and then refused to talk further, for fear of criminating himself. He mentioned, however, that he had been at Shea's Hotel on Wednesday night, and of having trouble there, in which his revolver was taken from him while asleep, and also said he had sold it in Dubuque Friday morning for one dollar and twenty-five cents, though he was unable to say where or to whom. The accused had been in Dubuque since Monday before the killing without any known business, and guarded against making acquaintances. These are substantially the facts upon which conviction was had. The defendant did not speak in his own behalf. When the evidence had been introduced, by motion, and also an instruction, the court was asked to direct the acquittal of the defendant because of the alleged insufficiency of the evidence. The facts shown, unexplained, might well lead to the conclusion that Healey was associated with Robbard in the commission of the crime. There was no question but that he was with him until eleven o'clock that evening, had been engaged with him in the commission of the crimes of robbery, and had the same

motive for concealing his whereabouts and in resisting arrest when pursued. Luther, though not identifying him, correctly describes him when passing the car with Robbard. The finding of the bloody revolver near the scene, with the battered bullets corresponding with Healey's is a remarkable coincidence, even though there is no positive identification. The evidence shows that these men were together fleeing from Dubuque from early Friday morning till arrested. The anxious inquiry of Healey whether both were dead, indicated personal knowledge of the transaction on his part, for had he learned elsewhere, the death of both would have been known. The evidence was such that the jury might conclude that the defendant either killed or aided and abetted Robbard in the murder of not only Frith, but Talcott as well.

II.   We have only the record of the conviction and the bill of exceptions before us and are unaided by argument. A careful examination of the record, however, convinces us the defendant's rights were fully guarded. The attorney appointed by the court to defend Healey presented all proper objections and carefully protected the record. M. F. Kelly when on the stand was asked this question: "At the time that Frith asked you if you had seen any parties, what, if anything further did he say as to who the parties were or what he wanted with them?" And over the objection of the defendant answered: "Why, he told me that he was looking for some parties that were holding up people around there, and he stated that they were holding up people around the city, and that he said that he thought they couldn't be far away, and he said he understood they were in the yard, and he said they couldn't be far away." This occurred about ten minutes before the shooting. Similar questions were asked Smith

and Williams, and like answers permitted. These rulings are vindicated by the eleventh instruction, wherein the jury were. told: "The evidence was admitted under the rule that what Frith and Talcott said was a part of what they were doing, and explanatory of it, and for no other purpose, and what Frith and Talcott were doing at this time is a matter proper for you to consider with the other facts in the case established by the evidence."

III.   The witnesses Jones, McDonald, Geiger, and Hardie were permitted to testify, over the objection of the defendant, that Healey, Robbard, and another had held them up between ten and eleven o'clock previous to the killing.   Again, the ground for receiving this evidence is clearly stated by the court in its sixth instruction, wherein it is said: "This evidence has been admitted in this case, not to. show that the accused are bad men, devoid of a proper sense of social duty, and therefore more likely than other or better men to have killed Frith, but to show that Frith, if he was attempting to arrest the accused, had the right to do so, and that the accused had a motive to resist such arrest.   Frith and Talcott were private citizens, and not officers, and, to justify them in attempting to arrest the accused, it must appear from the evidence that the felony of robbery, or attempt to rob, had been committed by the accused, and that Frith and Talcott had been informed of that fact, and had reasonable grounds to believe that the accused were guilty thereof."   The relative duties and rights of the deceased and the accused were then defined in event an arrest were attempted. This undoubtedly correctly states the law, and the circumstances shown warranted the introduction of the evidence and the instruction given.

IV.   We have noticed the main errors pointed out in the motion for a new trial.   There are forty-six grounds set out in this motion, and we have examined each one

with care, and find no error prejudicial to any right of the defendant. The instructions given include those requested, in so far as correctly stating the law applicable to the case, and are as favorable to the defendant as he had the right to have them. The judgment must be affirmed.— AFFIRMED.